Edwin M. Booth, Plaintiff-Appellant, v. John A. Cebula and Leda V. Cebula, Defendants-Appellees.

Gen. No. 47,789.

First District, Second Division.

April 13, 1960.

Louis G. Davidson, of Chicago, for appellant.

Peterson, Lowry, Rall, Barber, and Ross, of Chicago (A. R. Peterson, Owen Rall, Harold W. Huff, and J. Robert Geiman, of counsel) for appellee.

JUSTICE KILEY delivered the opinion of the court.

This is a personal injury action by a tenant against owners of a building. The answer relied on an exculpatory clause in the lease and defendants' motion for

summary judgment was granted. Judgment was entered accordingly and plaintiff has appealed.

The suit was filed January 19, 1956; the answer was filed February 6, 1956; and the part of the answer containing the exculpatory clause was stricken February 10, 1956. Our Supreme Court on January 22, 1959, denied rehearing in O'Callaghan v. Waller & Beckwith Realty Co., 15 Ill.2d 436. Defendants' motion for summary judgment, based on O'Callaghan, was filed February 20, 1959, and the judgment subject of this appeal was entered February 25, 1959. The Illinois Legislature, on April 13, 1959, enacted, effective July 1, 1959, section 15(a) of the Landlord and Tenant Act, Ill. Rev. Stat., ch. 80, sec. 15(a) (1959), rendering "void and against public policy and wholly unenforceable" exculpatory clauses such as the one in issue here.

Prior to oral argument, defendants moved in this court to transfer the cause to the Supreme Court on the ground that the statute relied on by plaintiff was unconstitutional, and therefore we had no jurisdiction to hear the appeal. They later withdrew the motion on the authority of Biagi v. O'Connor, 18 Ill.2d 238, and Bagdonas v. Liberty Land & Investment Co., 309 Ill. 103, 108.

The principal question is whether section 15(a) should be applied retrospectively so as to avoid the clause in the instant lease and invalidate the summary judgment for defendants.

The relevant parts of that Act are: "Every covenant . . . in . . . any lease of real property, except those business leases in which any municipal corporation, governmental unit or corporations regulated by a State or Federal commission or agency is lessor or lessee, exempting the lessor from liability for damages for injuries to person . . . caused by or resulting

413

from the negligence of the lessor . . . in the operation or maintenance of the . . . premises . . . shall be deemed to be void as against public policy and wholly unenforceable." Ill. Rev. Stat., ch. 80, sec. 15(a) (1959).

■ Plaintiff argues that the language of the section makes clear the intention of the legislature that every exculpatory clause in pre-existing leases as well as leases made after the Act are "void and wholly unenforceable." It is our opinion that even if we were persuaded by this argument of the legislature's intention, we must hold the trial court properly found that the exculpatory clause barred plaintiff's suit. We think that if section 15(a) was intended to be applied retroactively, the section would be unconstitutional as violating the Fourteenth Amendment of the United States Constitution and Article II, section 2 of the Illinois Constitution.

When section 15(a) was passed, defendants' right under the exculpatory clause had already vested and the legislature was without power to take that right away, Board of Education v. Blodgett, 155 Ill. 441; People v. Prather, 343 Ill. 443; People v. Lindheimer, 371 Ill. 367, 373, except in a proper exercise of police power. Weiler v. Dry Dock Sav. Institution, 258 App. Div. 581, 17 N.Y.S.2d 192, aff'd, 284 N. Y. 630, 29 N.E.2d 938 (1940). In the Blodgett case, a statute of limitations had run against a cause of action, and the Supreme Court decided the defendant had a vested property interest in that defense which was protected by the constitutional guarantee against a subsequent statute designed to save the cause of action. See People v. Deatherage, 401 Ill. 25, 34–35. In this respect a vested defense is, unless a mere informality, 6 R. C. L. 318 (1929), on the same footing as a vested cause of action. Board of Education v. Blodgett, 155 Ill. 441; see Bullard v. Holman, 184 Ga. 788, 193 S. E. 586, 588

414

(1937). The defense of the exculpatory clause was not a mere informality "not affecting . . . substantial rights," 6 R. C. L. 318 (1929); 113 A. L. R. 769 (1938), nor a right created by statute which the legislature could take away, Orlicki v. McCarthy, 4 Ill.2d 342, but "a legal exception from the demand made by another." Id. at 347.

Plaintiff contends that section 15(a) is the result of a valid exercise of the State police power and that accordingly the section is not invalid as abrogating the clause in the instant lease. He relies upon Hite v. Cincinnati, I. & W. R. Co., 284 Ill. 297, Louisville & Nashville R. R. v. Mottley, 219 U. S. 467 (1911), and Manigault v. Springs, 199 U. S. 473 (1905).

■ None of these cases is authority for plaintiff's contention with respect to section 15(a). The Hite and Mottley cases involve congressional action with respect to public utilities over which it had regulatory powers. The case before us is a matter of "private concern." O'Callaghan v. Waller & Beckwith Realty Co., 15 Ill.2d 436. The Manigault case is clearly a lawful exercise of police power. Reclamation of swamps is related to public health, and legislation implementing that public purpose may adversely affect vested rights and yet be constitutional. In Marcus Brown Holding Co. v. Feldman, 256 U. S. 170 (1921), the New York Legislature in the Act under attack expressly proclaimed a public emergency due to shortage of shelter. There is no such declaration in section 15(a). A retroactive application of that section so as to deprive defendants of the defense of the exculpatory clause would not be the consequence of a lawful exercise of a police power but a direct appropriation of a vested right. Legal Tender Cases, 79 U. S. (12 Wall.) 457 (1870).

Plaintiff states that our Supreme Court in O'Callaghan v. Waller & Beckwith Realty Co., 15 Ill.2d 436,

415

"invited" the legislature to do what was done in section 15(a). This may be, but if so, the invitation was not to attempt to destroy vested rights by an unconstitutional exercise of power. The minority opinion indicates this. 15 Ill.2d at 449. And the majority opinion implied it by hinting to the legislature that a legislative remedy for the "problem" was in use in New York State. Id. at 441.

■ The Illinois Legislature apparently took the hint because, except for differences not relevant now, section 15(a) is substantially identical with the New York Act. N. Y. Real Property Law, sec. 234. The interpretation the New York courts give to their Act is therefore persuasive. Because the New York courts thought a retroactive interpretation would probably be unconstitutional, they chose a constitutional interpretation and held the Act was prospective and not retrospective. Weiler v. Dry Dock Savings Institution, 258 App. Div. 581, 17 N.Y.S.2d 192, aff'd, 284 N. Y. 630, 29 N.E.2d 938 (1940); Bernard Katz, Inc. v. East Thirtieth Street Corp., 172 Misc. 873, 16 N.Y.S.2d 640 (1939), aff'd, 259 App. Div. 707, 19 N.Y.S.2d 145 (1940); Hanfeld v. A. Broido, Inc., 167 Misc. 85, 3 N.Y.S.2d 463 (1938).

■ We hold that section 15(a) must be given a prospective interpretation because we too think a retroactive application would violate the Fourteenth Amendment to the Federal Constitution and Article 2, section 2 of the Illinois Constitution. The reason is that the defense of the exculpatory clause is a vested property right protected by the due process clause. Board of Education v. Blodgett, 155 Ill. 441; Weiler v. Dry Dock Savings Institution, 258 App. Div. 581, 17 N.Y.S.2d 192, aff'd, 284 N. Y. 630, 29 N.E.2d 938 (1940). We need decide no other points on the interpretation aspect of the case.

416

The property on which the accident occurred was owned by John A. and Leda V. Cebula in joint tenancy, but only John A. Cebula signed the lease as lessor. For this reason plaintiff contends that Leda V. Cebula can not invoke the aid of the exculpatory clause. He relies upon Harms v. McCormick, 132 Ill. 104, in which he says, "This precise issue has been conclusively adjudicated."

In the Harms case the Supreme Court decided that the trial court committed reversible error in admitting in evidence a lease "under seal" which was signed by only one of several tenants in common in a suit for rent. The court said that only the cotenant who signed the lease was "bound" by the lease, that he only was a proper plaintiff, and the variance between the plaintiffs' pleading and proof was fatal. The defendant had objected to the introduction of the lease in evidence. His theory was that since the non-signing cotenants were not "bound" by the lease, he had no obligation to pay them rent.

In the instant case, however, plaintiff's suit is against both joint tenants as landlords. This is clear from the pleading as well as the legal theory since there is no other way that plaintiff could be the "invitee" of Leda V. Cebula, as he claims, except under the lease. He wants to bind her under the lease as cotenant so as to make her liable, but not have her "bound" so that she may have the benefit of the clauses advantageous to her. This distinguishes the Harms case.

Plaintiff claims his status as Leda V. Cebula's invitee was created by his lease with John A. Cebula. He cites several cases to show that an invitee of one owner is deemed to be the invitee of all owners. Those cases do not hold, however, that where this result follows from a lease, the non-signing owner upon whom

417

liability is imposed may not avail herself of the benefits of the lease.

■ We think that what was said by this court in Reiger v. Bruce, 322 Ill. App. 689, has special application to the instant case: "If one of two joint tenants executes a lease without the participation of the other, it will be deemed to be for the benefit of both." The lessee ought to know the title of the lessor, and if he accepts as lessor less than all the joint owners, he takes with the risk that he may be taking, for the term, only the interest of the signer and, in addition, the onus of a future defense against non-signing owners of his right of possession of their undivided shares. Kelly v. Parker, 221 Ill. App. 273; 49 A.L.R.2d 798 (1956). He takes the leasehold with the legal rules that prevent him from challenging the signing owner's authority to sign for the other owners, National Gas & Oil Co. v. Rizer, 20 Ill.App.2d 332, and with the risk that if he seeks to impose liability upon non-signing owners as landlords, they will have all the benefits of the lease that the signing owners have.

We conclude that Leda V. Cebula is entitled to invoke the exculpatory clause in defense of plaintiff's suit against her.

For the reasons given the judgment is affirmed.

Affirmed.

MURPHY, P. J. and BURMAN, J., concur.